**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| MICHELLE LINN,<br><br>Plaintiff,<br><br>v.<br><br>SELECT PORTFOLIO SERVICING and U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE SUCCESSOR IN INTEREST TO WACHOVIA BANK N.A. AS TRUSTEE FOR CHASE FUNDING LOAN ACQUISITION TRUST, MORTGAGE LOAN ASSET BACKED CERTIFICATES, SERIES 2004-OPT1,<br><br>Defendants. | ) | Civil Action No. 26-10240-MJJ |

**MEMORANDUM OF DECISION**

October 1, 2026

JOUN, D.J.

Plaintiff Michelle Linn initiated this action against Defendants U.S. Bank Trust Company, National Association, as Trustee, as successor-in-interest to U.S. Bank National Association, successor trustee to Wachovia Bank, NA, as trustee, for Chase Funding Loan Acquisition Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT11 (the "Trust") and its loan servicer, Select Portfolio Servicing, Inc. ("SPS") (together, the "Defendants") in Massachusetts Superior Court, Plymouth County, on December 31, 2025. [Doc. No. 1-1]. The action was removed to this Court on January 21, 2026. [Doc. No. 1]. Plaintiff brings two causes of action. First, Plaintiff seeks a declaratory judgment (Count I) that the Trust lacks standing as mortgagee due to a purportedly invalid assignment of the Mortgage and therefore lacks statutory power of sale to initiate

foreclosure and sale of Plaintiff's property. [Doc. No. 1-1 at ¶¶ 36–43]. Second, Plaintiff brings a claim for breach of contract (Count II) arising from Defendants' alleged breach of a Trial Modification Plan and Lien Modification Agreement. [*Id.* at ¶¶ 44–64].

Before me is Defendants' Motion for Summary Judgment on all claims. [Doc. No. 17]. For the reasons explained below, the Motion is GRANTED.

## I. BACKGROUND

The Court summarizes the following operative facts, "not as they necessarily are, but rather as a jury might reasonably find them to be in favor of . . . the non-movant," Ms. Linn. *Doe v. Brown Univ.*, 43 F.4th 195, 200 (1st Cir. 2022). The following facts are undisputed unless noted otherwise.

### A. The Mortgage, Note, Loan, and Subsequent Assignments

On April 30, 2004, Michelle Linn and Matthew Linn (together with the Plaintiff, the "Borrowers") obtained title to the real property of 627 Auburn Street, Whitman, Massachusetts via Massachusetts Quitclaim Deed, which was recorded with the Plymouth County Registry of Deeds on April 30, 2004. [Doc. No. 24 at ¶ 1]. That same day, the Borrowers executed an Adjustable Rate Note (the "Note") payable to Option One Mortgage Corporation in the original principal amount of $216,000.00 [*Id.* at ¶ 2].

To secure their obligations under the Note, the Borrowers granted a mortgage (the "Mortgage") (together with the Note, the "Loan") dated April 30, 2004, in favor of Option One Mortgage Corporation and secured by the Property [*Id.* at ¶ 3]. The Mortgage was recorded with the Registry on April 30, 2004. [*Id.*]. The "Borrower" as used in the Mortgage is defined as "Matthew Linn and Michelle Linn" [*Id.* at ¶ 4]. Under Paragraph 27 of the Mortgage, the Loan may only be modified by written agreement and signed by all parties:

> 27. Modification. This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

[*Id.* at ¶ 5]; [Doc. No. 17-4 at 6].

On May 6, 2004, Option One Mortgage Corporation assigned the Mortgage to Chase Manhattan Mortgage Corporation via an Assignment of Mortgage recorded with the Registry on October 4, 2005 (the "First Assignment"). [Doc. No. 24 at ¶ 6]; [Doc. No. 17-23 at 2].[1] On January 25, 2013, JP Morgan Chase Bank, National Association, successor by merger to Chase Home Finance, LLC, successor by merger to Chase Manhattan Mortgage Corporation assigned the Mortgage to U.S. Bank, National Association as Trustee, successor in interest to Wachovia Bank, N.A. as Trustee for Chase Funding Loan Acquisition Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1 via an Assignment of Mortgage recorded with the Registry on February 12, 2013 (the "Second Assignment"). [Doc. No. 24 at ¶ 7]; [Doc. No. 17-24 at 2].[2] On December 20, 2024, U.S. Bank, National Association as Trustee, successor in interest to Wachovia Bank, N.A. as Trustee for Chase Funding Loan Acquisition Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1 assigned the Mortgage to the Trust via a Corporate Assignment of

---

[1] Plaintiff disputes this fact and argues that the First Assignment is void because, at the time of its execution on May 6, 2004, the First Assignment designated an assignee in-blank and failed to identify the assignee. [Doc. No. 24 at ¶ 6]. Plaintiff further claims that "Chase Manhattan Mortgage Corporation" is a "typed-in assignee." [*Id.*]. To the extent that any facts are not properly disputed, those will be considered undisputed. *Guerrios Flores v. S.M. Med. Servs., C.S.P.*, No. 18-1594, 2020 WL 1698993, at *2 (D.P.R. Apr. 7, 2020) ("Responses which do not oppose the truth of the statement offered and are either irrelevant to the matter at hand, provide additional evidence not related to the fact in question and/or failed to contradict it are insufficient to properly controvert a material fact") (citation omitted). Plaintiff's dispute here is argumentative and unsupported by record evidence. "Allegations, accusations, argument, and speculation are not facts to support or oppose summary judgment." *Gorsuch v. Maloney*, No. 10-cv-495, 2012 WL 5845424, at *1 (D.N.H. Nov. 19, 2012) (citing *Jones v. Walgreen Co.*, 679 F.3d 9, 13 (1st Cir. 2012)). Additionally, Plaintiff does not dispute that the mortgage, as recorded, includes the assignee as "Chase Manhattan Mortgage Corporation." [Doc. No. 24 at ¶ 6].

[2] Plaintiff disputes the Second Assignment as void because she claims the First Assignment is void. [Doc. No. 24 at ¶ 7]. This is not a proper dispute for the same reasons stated in *supra* note 1.

Mortgage recorded with the Registry on January 22, 2025 (the "Third Assignment"). [Doc. No. 24 at ¶ 8]; [Doc. No. 17-26 at 2–3].[3]

SPS became the servicer of the Loan effective November 1, 2013. [Doc. No. 24 at ¶ 9]. On February 14, 2022, Plaintiff and Matthew Linn divorced, as evidenced by a Judgment of Divorce NISI that was entered on July 3, 2023, and was recorded with the Registry on July 26, 2024. [*Id.* at ¶ 10]; [Doc. No. 17-28]; [Doc. No. 17-29]. Under the Judgment of Divorce, "[e]ach party shall be liable for all debts in his or her name." [Doc. No. 17-29 at 2].

### B. Loan Modifications

On April 5, 2010, the Borrowers executed a Loan Modification Agreement (the "First Modification"). [Doc. No. 24 at ¶ 11]; [Doc. No. 17-5]. Paragraph 3(C) of the First Modification states in relevant part:

> C. That the Loan Documents are composed of valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.
>
> D. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect.

[Doc. No. 24 at ¶ 12]; [Doc. No. 17-5 at 4].

The Borrowers subsequently defaulted on the Loan as modified by the First Modification. [Doc. No. 24 at ¶ 13]. On October 11, 2013, the Borrowers executed a second Loan Modification Agreement (the "Second Modification") which was recorded with the Registry on November 13, 2013. [*Id.* at ¶ 14]; [Doc. No. 17-6]. Under the terms of the Second Modification, the Loan default was cured: the Loan's interest rate was reduced to 2.000% for the first five years, and $62,684.00 of the Loan balance was deferred and did not accrue interest, among additional terms. [Doc. No.

---

[3] Plaintiff disputes the Third Assignment as void because she claims the First and Second Assignments are void. [Doc. No. 24 at ¶ 8]. This is not a proper dispute for the same reasons stated in *supra* note 1.

24 at ¶ 15]; [Doc. No. 17-6]. Paragraph 3(C) of the Second Modification states, “the Loan Documents are composed of valid, binding agreements, enforceable in accordance with their terms.” [Doc. No. 24 at ¶ 16]; [Doc. No. 17-6 at 6]. Paragraph 3(D) of the Second modification states:

> D. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code remain in full force and effect; … except as otherwise specifically provided in, and as expressly modified by, this Agreement, or by the U.S. Bankruptcy Code, the Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

[Doc. No. 24 at ¶ 17]; [Doc. No. 17-6 at 6].[4] The Borrowers defaulted on the Loan as modified by the Second Modification, on or about December 1, 2013. [Doc. No. 24 at ¶ 18].

### C. <u>The 2022 Action</u>

On August 29, 2022, Plaintiff filed a lawsuit to stop the Trust’s pending foreclosure sale of the Property in Massachusetts Superior Court, Plymouth County, which Defendants removed to this Court, *see Linn v. Option One Mortgage*, No. 1:22-cv-11535-IT Doc. No. 1 (the “2022 Action”). [Doc. No. 24 at ¶ 19]. The 2022 Action included counts for (i) violations of 940 CMR 7.00, *et seq.* and 940 CMR 8.00, *et seq.*; (ii) violations of G.L. c. 244, §§ 35A & 35B; (iii) violations of G.L. c. 106 § 3-301; and (iv) breach of the covenant of good faith and fair dealing. [*Id.* at ¶ 20].

[4] Plaintiff does not dispute the language in the First Modification and Second Modification but disputes whether Chase Home Finance LLC is identified as a Mortgagee or Assignee of the Mortgage. [Doc. No. 24 at ¶¶ 12, 16–17]. This is not a proper dispute to the extent that it is not supported by record evidence and does not “oppose the truth of the statement offered.” *Guerríos Flores*, 2020 WL 1698993, at *2 (citation omitted).

On January 17, 2024, Judge Talwani granted Defendants' Motion for Judgment on the pleadings and entered a judgment and order of dismissal on January 18, 2024. [*Id.* at ¶ 21].

### D. <u>The Trial Modification Plan and Lien Modification Agreement</u>

On December 19, 2023, SPS sent the Borrowers a Trial Modification Plan, and on May 3, 2024, SPS sent the Borrowers a Lien Modification Agreement. [*Id.* at ¶¶ 22–23]; [Doc. No. 17-10]; [Doc. No. 17-11]. Plaintiff disputes that the Trial Modification Plan and Lien Modification Agreement were sent to Matthew Linn but does not cite to any record evidence to support this dispute. [Doc. No. 24 at ¶¶ 22–23]. The Lien Modification Agreement states that, in order to accept the Lien Modification Agreement, "all borrowers must sign the Agreement and return with all pages no later than 06/02/2024." [Doc. No. 24 at ¶ 24]; [Doc. No. 17-11 at 4]. Plaintiff disputes this fact, citing her affidavit that "[t]hroughout the entire application, review and TPP period, SPS represented to [Plaintiff] that [Plaintiff] would be the only party that would have to execute the final modification agreement." [Doc. No. 24 at ¶ 24]; [Doc. No. 25 at ¶ 7].

On June 12, 2024, SPS received a copy of the Lien Modification Agreement's signature page signed by Plaintiff, which did not include Mr. Linn's signature. [Doc. No. 24 at ¶ 25]; [Doc. No. 17-12]. On June 14, 2024, SPS sent the Borrowers correspondence that the Lien Modification Agreement was missing a required signature and must be "signed and dated by all customers." [Doc. No. 24 at ¶ 26]; [Doc. No. 17-13 at 6]. This correspondence extended the deadline to return the signed Lien Modification Agreement until July 29, 2024. [*Id.*]; [Doc. No. 17-13 at 4]. SPS did not receive the Lien Modification Agreement signed by the Borrowers by July 29, 2024. [Doc. No. 24 at ¶ 27]; [Doc. No. 17-14]. On July 29, 2024, SPS sent correspondence to the Borrowers stating that the Lien Modification Agreement was withdrawn. [Doc. No. 24 at ¶ 28]; [Doc. No. 17-14 at

3]. On March 6, 2026, the Trust conducted a foreclosure sale and purchased the Property at the foreclosure sale. [Doc. No. 24 at ¶ 29]; [Doc. No. 17-15]; [Doc. No. 17-16].

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Joseph v. Lincare, Inc.*, 989 F.3d 147, 157 (1st Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). A dispute is "genuine" if a reasonable jury could resolve it in favor of the nonmoving party, and a fact is "material" if it could affect the outcome of the case. *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (cleaned up). Once the moving party properly supports its motion, the opposing party "bears the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Lincare*, 989 F.3d at 157 (citation omitted).

In evaluating the motion, the Court considers the record and draws all reasonable inferences in favor of the nonmoving party, but need not credit "conclusory allegations, improbable inferences, and unsupported speculation." *Dixon-Tribou v. McDonough*, 86 F.4th 453, 458 (1st Cir. 2023) (quoting *Lahens v. AT&T Mobility P.R., Inc.*, 28 F.4th 325, 333 (1st Cir. 2022)). The Court may consider depositions, documents, declarations, and other record evidence, Fed. R. Civ. P. 56(c)(1)(A); *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014), including portions of the record not specifically cited by the parties, *see Asociación de Periodistas de P.R. v. Mueller*, 680 F.3d 70, 78 n.6 (1st Cir. 2012) (citing Fed. R. Civ. P. 56(c)(3)).

## III. ANALYSIS

Defendants move for summary judgment on both of Plaintiff's claims. As an initial matter, Defendants' motion is <u>GRANTED</u> as to Count I, in which Plaintiff seeks a declaratory judgment that Defendants lack standing as mortgagee. In support of summary judgment on Count I,

Defendants advance several independent grounds, including res judicata, estoppel, and M.G.L. c. 183, § 54B. Plaintiff does not address any of these arguments in her opposition. Instead, her opposition is directed solely to her breach of contract claim. *See* [Doc. No. 23]. Arguments not developed in opposition to summary judgment are waived. *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995); *Schneider v. Local 103 I.B.E.W. Health Plan*, 442 F.3d 1, 3 (1st Cir. 2006) (citation omitted) (affirming dismissal of "abandoned" claims and noting that "it is well-established that issues . . . unaccompanied by some effort at developed argumentation, are deemed waived"); *Cranberry Commons, Ltd. v. Bimbo Bakeries USA, Inc.*, No. 11-cv-11654, 2012 WL 2914403, at *3 (D. Mass. July 18, 2012) ("Plaintiff ignores this argument in its opposition; therefore, it is deemed waived, and summary judgment in defendant's favor is proper") (citation omitted).[5]

Accordingly, my analysis will only focus on the breach of contract claim (Count II).

### A. <u>Breach of Contract</u>

Before turning to the merits of Plaintiff's breach of contract claim, I take a moment to clarify the premise underlying Plaintiff's claim. Plaintiff's opposition refers to the breach of only one contract: the Trial Modification Plan. *See, e.g.*, [Doc. No. 23 at 6] ("[A] contract was formed

---

[5] The Court notes that, even if waiver were not dispositive, res judicata independently bars Plaintiff's claim insofar as it challenges the validity of the mortgage assignments. Defendants correctly argue that Plaintiff could have raised that challenge in the 2022 Action. "Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 583 (1st Cir. 1995). The elements for res judicata are met here: (1) there was a final judgment on the merits in the 2022 Action when the court granted Defendants' motion for judgment on the pleadings, (2) there is sufficient identicality between the causes of action asserted in the 2022 Action and the action here, and (3) the parties in both actions are identical. *See id.* Although Plaintiff brings different causes of action here, both actions arise from the "same nucleus of operative facts;" Plaintiff's efforts to prevent the mortgage foreclosure. *Id.* at 583–84 ("Although a set of facts may give rise to multiple counts based on different legal theories, if the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then those facts represent one cause of action."). Because Plaintiff could have challenged the validity of the mortgage assignments in the 2022 Action, res judicata bars her from doing so here.

by the Trial Period Plan agreement and the contract was in fact breached by the Defendants failure to finalize or deny a permanent modification by the Modification Effective Date and in adherence with the Trial Period Plan's time is of the essence clause."). The record, however, reflects two relevant agreements: the Trial Modification Plan and the Lien Modification Agreement. Read fairly, Plaintiff's breach of contract claim depends on both agreements. She contends that, under the Trial Modification Plan, her compliance with SPS's document requests and timely payment of the three required monthly installments obligated SPS to finalize a permanent loan modification. *See* [*Id.*] ("The conditions of the Trial Period Plan contract were met by the Plaintiff, yet SPS never performed by the Modification Date deadline. Instead SPS breached the agreement by failing to 'finalize' a permanent modification by denying a final modification solely in her name."). The contemplated permanent modification, in turn, is reflected in the Lien Modification Agreement. Thus, Plaintiff's theory necessarily relies on the Trial Modification Plan and the Lien Modification Agreement read in conjunction. Whether the agreements are considered separately or together, however, the record does not support Plaintiff's theory of breach.

Under Massachusetts law, "plaintiffs must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs sustained damages as a result of the breach." *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007). "Plaintiffs also must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with substantial certainty, the specific contractual promise the defendant failed to keep." *Id.* (citation omitted). Defendants do not dispute that the Trial Modification Plan constituted a contract. They argue instead that the record does not establish any breach of that agreement. As to the Lien Modification Agreement, Defendants contend that no binding contract was formed because Plaintiff did not validly accept its terms.

The interpretation of these agreements presents a question of law unless their terms are ambiguous. "Under Massachusetts law, interpretation of a contract is ordinarily a question of law for the court, and, as a question of law, is subject to plenary review." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 783 (1st Cir. 2011) (citation omitted). A court must therefore first determine whether the relevant contractual language is ambiguous. *Id.* "The meaning of an unambiguous contract term is a question of law, while the meaning of an ambiguous contract term is a question of fact." *Id.*

Here, Plaintiff argues that "the contract breached by the Defendants was undoubtedly ambiguous." [Doc. No. 23 at 6]. However, Plaintiff does not offer any facts or argument to support this claim, let alone clarify which contract she believes is ambiguous. [*Id.*]. Mere disagreement over contractual meaning is insufficient. "Ambiguity is not created merely because the litigants disagree about the meaning of a contract." *Nicolaci v. Anapol*, 387 F.3d 21, 26 (1st Cir. 2004). Rather, a contract is ambiguous only where its terms are facially inconsistent or "where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." *Farmers*, 632 F.3d 783 (citation omitted). Seeing that there is no basis to find either contract ambiguous here, I interpret both contracts "according to [their] plain terms." *Id.* at 784 (citation omitted). "Summary judgment is appropriate when those plain terms unambiguously favor either side." *Id.* Here, the plain terms of both the Trial Modification Plan and Lien Modification Agreement unambiguously support Defendants.

**1. Trial Modification Plan**

Starting with the Trial Modification Plan, it is undisputed that Plaintiff accepted the terms of the Trial Modification Plan once she made the payments listed in the "Plan Payments" section, [Doc. No. 17-10 at 2]. However, there was no such guarantee in the Trial Modification Plan that

once those payments were made, Plaintiff was guaranteed a lien modification. Rather, the Trial Modification Plan unambiguously states that, "In order for SPS to ***consider*** a modification, you must timely remit all payments under the Plan, and if required, you must provide SPS with information necessary to verify your income and assets, which will support your ability to repay the lien if a modification is approved." [*Id.*] (emphasis added). Under the "Modification" section of the Trial Modification Plan, it states:

> If the required payments are made under the Plan, and you submit the required information to SPS verifying your income and assets, ***SPS will consider a modification*** of the repayment terms of the lien on the property to make the monthly payments more affordable. You will be notified of the income and asset verification documents that SPS must receive in order for you to be considered for a modification.

[*Id.* at 3] (emphasis added).

As such, Plaintiff's claim that she was owed a lien modification upon completion of the requirements of the Trial Modification Plan are contradicted by the plain terms of that plan, including Plaintiff's own affidavit. *See* [Doc. No. 25 at ¶ 5] ("The Trial Plan Modification Contract Agreement described a 3 month trial period that was to run from February 1, 2024 through April 1, 2024 at which time a final modification ***would be offered*** to be in writing.") (emphasis added). The record demonstrates that upon completion of the terms in the Trial Modification Plan, the only obligation that was triggered to SPS was to consider a lien modification, not to guarantee one.

Indeed, viewing the Trial Modification Plan as a standalone contract, there is no breach. Plaintiff complied with the payments outlined in the plan, and then on May 3, 2024, Plaintiff received a Lien Modification Agreement and correspondence from SPS stating that Plaintiff had been "approved for a lien modification." [Doc. No. 17-11 at 1]. As such, if the breach of contract claim is based on a theory that the Trial Modification Plan was breached, that claim fails, as

Defendants fulfilled their obligations under the Trial Modification Plan by offering Plaintiff a Lien Modification Agreement.

**2. Lien Modification Agreement**

"A contract is formed upon acceptance of an offer." *Alison H. v. Byard*, 163 F.3d 2, 6 (1st Cir. 1998). Having completed the requirements of the Trial Modification Plan, Plaintiff received, on May 3, 2024, an offer from SPS to enter into a Lien Modification Agreement. [Doc. No. 17-11]. However, no contract was formed because she did not validly accept the Lien Modification Agreement in accordance with its terms.

SPS clearly stated that "to accept this modification, all borrowers must sign the Agreement and return with all pages no later than 06/02/2024." [*Id.* at 4]. Having only received Plaintiff's signature after the deadline passed, [Doc. No. 17-12 at 2], SPS sent the Borrowers correspondence stating that they have "received documents for acceptance of the Modification Agreement on your account, but have determined that all required information is not complete," [Doc. No. 17-13 at 4]. SPS clarified again that the Lien Modification Agreement needed to be "signed and dated by all customers" and required the missing signature of Plaintiff's ex-husband, extending the deadline for acceptance until July 29, 2024. [Doc. No. 17-13 at 4–6]. Plaintiff did not provide the signature, and on July 29, 2024, SPS informed the Borrowers that the Lien Modification Agreement was "withdrawn," explaining that Plaintiff was "offered a Modification but did not accept the offer of loss mitigation assistance by the established deadline." [Doc. No. 17-14 at 3]. Thus, under the plain terms of the Agreement, Plaintiff did not validly accept an offer for the lien modification such that Defendants can be found to be in breach. *See, e.g.*, *Trifiro v. New York Life Ins. Co.*, 845 F.2d 30, 32 (1st Cir. 1988) (finding respondent "clearly did not accept" offer when he neither "signed nor returned" the letter containing the offer "as requested by petitioner").

Plaintiff argues that there is a material dispute as to whether she validly accepted the Lien Modification Agreement offer because (1) neither contract was sent to Matthew Linn, [Doc. No. 24 at ¶¶ 22–23], and (2) "[t]hroughout the entire application, review and TPP period, SPS represented to [Plaintiff] that [Plaintiff] would be the only party that would have to execute the final modification agreement," [Doc. No. 25 at ¶ 7]; [Doc. No. 24 at ¶ 24]. Neither contention is sufficient to defeat summary judgment.

At summary judgment, "[a]lthough we will draw all reasonable inferences in the nonmovant's favor, we will not 'draw unreasonable inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective.'" *Pina v. Children's Place*, 740 F.3d 785, 795 (1st Cir. 2014) (citing *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007)). Where the nonmovant bears the ultimate burden of proof, she must present "'definite, competent evidence' sufficient to establish the elements of her claim" to survive summary judgment. *Pina*, 740 F.3d at 795–796 (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (genuine issues of material fact are "not the stuff of an opposing party's dreams")). Plaintiff has not met that burden here. Her assertion that the relevant contracts were not sent to Matthew Linn is unsupported and contradicted by the record. The pertinent contracts and correspondence are addressed to Matthew Linn, identify him as a Borrower, and state that his signature is required for acceptance. Plaintiff's separate assertion that SPS orally represented that only her signature would be necessary fares no better. Plaintiff does not identify the SPS representative who allegedly made that statement, when it was made, the circumstances in which it was made, or whether the speaker had authority to alter the express acceptance requirements contained in the written agreement. On this record, the alleged oral representation does not constitute definite, competent evidence sufficient to create a genuine dispute of material fact.

Even assuming Plaintiff was orally told that her signature alone would suffice, she has not shown that such a representation could modify the parties' written contractual obligations. The Mortgage expressly provides that the Loan may be modified only by a written agreement signed by the parties. [Doc. No. 17-4 at 6]. To the extent the proposed lien modification constituted a modification of the Loan, an alleged oral representation by SPS could not modify either the Loan or the written terms governing acceptance of the Lien Modification Agreement. *See Levesque v. Schroder Inv. Mgmt. N. Am., Inc.*, 368 F. Supp. 3d 302, 310 (D. Mass. 2019) (finding no enforceable modification where the governing agreement "permits only written modifications" and the plaintiff "produced no evidence of written modifications").

Plaintiff's reliance on *Young v. Wells Fargo Bank, N.A.* is also misplaced. 717 F.3d 224 (1st Cir. 2013). There, plaintiff Young "sought to modify the terms of her mortgage pursuant to the Home Affordable Modification Program ("HAMP"), a federal initiative that incentivizes lenders and loan servicers to offer loan modifications to eligible homeowners." *Id.* at 228. The Secretary of the Treasury entered into agreements with home loan servicers, including Wells Fargo, who agreed to identify homeowners who were in default and offer those homeowners a Trial Period Plan ("TPP") as a precursor to obtaining a permanent modification. *Id.* at 228–229. The TPP offered to Young is similar to the Trial Modification Plan here: "If the borrower complies with the TPP's terms, including making required monthly payments, providing the necessary supporting documentation, and maintaining eligibility, the guidelines state that the servicer should offer the borrower a permanent loan modification." *Id.* at 229. One of Young's theories of liability was that "Wells Fargo breached the TPP by failing to send her a permanent modification agreement either before or at the end of the three-month trial period." *Id.* at 233. The First Circuit vacated dismissal of the breach of contract claim because the complaint contained enough allegations that

"defendants breached the contract by failing to provide a permanent modification agreement by the modification effective date." *Id.* at 235. The First Circuit disagreed with defendants' argument that it did not need to "offer the permanent modification until some undefined point after the modification effective date," because "defendants' interpretation would permit them to exercise an unfettered right to withhold a permanent modification offer for an uncertain period of time after the modification effective date has passed, thereby erasing the benefits to the plaintiff of her compliance with the TPP." *Id.*

The circumstances here are materially different. The record establishes that Defendants performed the obligation that was allegedly absent in *Young*: they extended a permanent-modification offer after Plaintiff completed the Trial Modification Plan. Plaintiff's final trial payment was due on April 1, 2024, and Defendants sent Plaintiff the Lien Modification Agreement and accompanying offer on May 3, 2024. [Doc. No. 17-10 at 2]; [Doc. No. 17-11]. Thus, unlike the servicer in *Young*, Defendants did not indefinitely withhold a permanent-modification agreement after Plaintiff completed the trial period. Additionally, *Young* arose at the motion-to-dismiss stage and addressed whether the plaintiff had plausibly alleged that the servicer breached the TPP by failing to provide the promised permanent-modification agreement. It does not hold that successful completion of a trial plan itself consummates a permanent loan modification, nor does it eliminate a borrower's obligation to comply with the acceptance requirements of a subsequently offered modification agreement. Here, Defendants offered Plaintiff a permanent modification, but Plaintiff did not accept that offer in the manner expressly required because the agreement required Matthew Linn's signature as well. Accordingly, *Young* does not create a genuine dispute of material fact as to whether a permanent modification agreement was formed in this case.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, [Doc. No. 17], is GRANTED.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge